# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **BRETT KELLY QUINN, JR.** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | |
| ) | |
| **SOCIAL SECURITY** ) | Case No.: 7:20-cv-01418-AMM |
| **ADMINISTRATION,** ) | |
| **COMMISSIONER,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OF DECISION

Plaintiff Brett Kelly Quinn, Jr. brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("benefits") and supplemental security income. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Based on the court's review of the record, the court **AFFIRMS** the decision of the Commissioner.

## I.  Introduction

On July 30, 2018, Mr. Quinn filed an application for benefits under Title II of the Act, alleging disability as of October 31, 2017. R. 15, 72–84. Also on July 30, 2018, Mr. Quinn filed an application for supplemental security income under Title XVI of the Act, alleging disability as of October 31, 2017. R. 15, 59–71. Mr. Quinn

alleges disability due to post traumatic stress disorder, traumatic brain injury, and depression. R. 60. He has at least a high school education, is able to communicate in English, and has past relevant work experience as a production assembler. R. 24.

The Social Security Administration ("SSA") initially denied Mr. Quinn's applications on September 13, 2018. R. 15, 59–86, 114–23. On October 9, 2018, Mr. Quinn filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 15, 128–29. That request was granted. R. 131–36. Mr. Quinn received a video hearing before ALJ George W. Merchant on October 7, 2019. R. 15, 33–58. On April 8, 2020, ALJ Merchant issued a decision, finding that Mr. Quinn was not disabled from October 31, 2017 through the date of his decision. R. 15–26. Mr. Quinn was thirty-six years old at the time of the ALJ decision. R. 24–25.

Mr. Quinn appealed to the Appeals Council, which denied his request for review on August 28, 2020. R. 1–3. After the Appeals Council denied Mr. Quinn's request for review, R. 1–3, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On September 23, 2020, Mr. Quinn sought this court's review of the ALJ's decision. *See* Doc. 1.

## II. The ALJ's Decision

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. §§ 404.1520, 416.920. *First*, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i). "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. *Id*. *Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If such criteria are met, the claimant is declared disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite his impairments. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past

relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the *fifth* and final step. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 404.1560(c), 416.920(g)(1), 416.960(c).

The ALJ determined that Mr. Quinn last met the insured status requirements of the Act on June 30, 2020. R. 15, 17. Next, the ALJ found that Mr. Quinn had not engaged in substantial gainful activity since his alleged onset date. R. 17. The ALJ decided that Mr. Quinn had the following severe impairments: post traumatic stress disorder, anxiety disorder, major depressive disorder, history of traumatic brain injury, polysubstance abuse disorder, and seizure disorder. R. 17–18. The ALJ found that Mr. Quinn's basil cell carcinoma was "not severe" because "[t]here is no indication that this impairment resulted in more than a slight abnormality or has

more than a minimal effect on [Mr. Quinn's] ability to do basic work activities." R. 18. Overall, the ALJ determined that Mr. Quinn did not have "a physical impairment or combination of impairments that meets or medically equals one of the listed impairments" to support a finding of disability. R. 18. The ALJ also determined that "[t]he severity of [Mr. Quinn's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15." R. 18.

The ALJ found that Mr. Quinn's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 21. The ALJ found that Mr. Quinn had the "residual functional capacity to perform a full range of work at all exertional levels" with certain nonexertional limitations. R. 20. The ALJ determined that Mr. Quinn must avoid unprotected heights, hazardous machines, commercial driving, open bodies of water, and open heat sources. R. 20. The ALJ also determined that Mr. Quinn can: understand, remember, and carry out simple instructions; have infrequent, or less than occasional, contact with the public; and can handle infrequent, or less than occasional, changes. R. 20.

According to the ALJ, Mr. Quinn was "capable of performing past relevant work as a production assembler." R. 24. The ALJ determined that "[t]his work does not require the performance of work-related activities precluded by [Mr. Quinn's]

5

residual functional capacity." R. 24. According to the ALJ, Mr. Quinn is "a younger individual," and he has "at least a high school education," as those terms are defined by the regulations. R. 24. The ALJ determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." R. 24 (citations omitted). Because Mr. Quinn's "ability to perform work at all exertional levels has been compromised by nonexertional limitations," the ALJ enlisted a vocational expert to ascertain whether "the extent to which these limitations erode the occupational base of unskilled work at all exertional levels." R. 25. Through written interrogatories, that expert responded that such individual "would be able to perform the requirements of representative occupations such as hand packager, . . . marker, . . . and laundry worker." R. 25, 362–65, 377–80.

Based on these findings, the ALJ concluded that Mr. Quinn did not have a disability as defined in the Act, from October 31, 2017 through the date of the decision, April 8, 2020. R. 16, 25–26. Mr. Quinn now challenges that decision.

### III. Factual Record

The only argument before the court relates to Mr. Quinn's migraines. Therefore, only medical evidence related to migraines is discussed below.

Mr. Quinn has a history of traumatic brain injury from an incident related to his military service in Iraq. R. 525; *see also* Doc. 14 at 2 ("Quinn's medical problems include severe headaches and migraines following a traumatic brain injury while serving in the U.S. Army during the Iraq war when the vehicle in which he was riding struck an improved explosive device (IED)."). An October 31, 2018 disability determination letter from the Veterans Administration, assigned Mr. Quinn "a 90% final degree of disability." R. 226–29. With respect to migraines, Mr. Quinn was assigned a 30% rating for "migraine headaches, residual of traumatic brain injury." R. 229. The Veterans Administration's eligibility and means test information states that Mr. Quinn's migraines are service-connected. R. 450.

On October 27, 2018, Mr. Quinn presented to the DCH Regional Medical Center emergency department complaining of chest pain. R. 550. The past medical history notes include a mention of "migraines." R. 551. On November 17, 2018, Mr. Quinn again presented to the DCH Regional Medical Center emergency department complaining of chest tightness and elevated heart rate. R. 570. The past medical history notes include a mention of "migraines." R. 571.

At a March 12, 2019 visit to the Veterans Administration, Mr. Quinn "denie[d] headaches." R. 619. However, Mr. Quinn presented to neurology at Veterans Administration on June 14, 2019 to follow-up on "seizures and headaches." R. 637. The progress notes state: "Since the previous visit, the veteran has not had

any seizures and is not having med side effects. He has started having some headaches that are migraine by description. They tend to occur upon awakening from sleep. They are throbbing pain associated with multiple sensitivities, and he takes OTC meds that relieve after a while. He does get sleepy and takes a nap in the daytime, and has been told he snores. He is not aware of any apneas." R. 638. The assessment from this visit was that "[t]he onset of [migraine headaches] after sleep suggests sleep apnea." R. 639. Mr. Quinn was prescribed Imitrex as an abortive and advised to follow-up in six months. R. 639.

Pharmacy records show that Mr. Quinn was prescribed Amitriptyline on August 6, 2019 for sleep/headaches and Sumatriptan on June 14, 2019 for migraines. R. 698–99.

On September 9, 2019, Mr. Quinn presented to the Veterans Administration for a primary care follow-up visit. R. 754–55. He reported "that for the past month he has been having pain to the base of his neck toward the back which has increased his headaches." R. 755.

**IV.  Standard of Review**

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. §§ 405(g), 1383(c)(3); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal

standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. §§ 405(g), 1383(c)(3). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to

apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## V. Discussion

Mr. Quinn alleges that the ALJ's decision should be reversed because "the ALJ failed to properly consider Quinn's subjective complaints of pain and migraine headaches, and he failed to properly consider the side effects of Quinn's medications." Doc. 14 at 9.

A claimant's subjective complaints are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a claimant claims disability due to pain or other subjective symptoms. The claimant must show evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling 16-3p, 2017 WL 5180304, at *3–*4 (Oct. 25, 2017) ("SSR 16-3p"); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of a claimant's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which a claimant's symptoms affect his capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of a claimant's symptoms, (3) the claimant's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the claimant takes to relieve symptoms, and (8) any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p at *4, *7–*8. "In determining whether a claimant's impairments limit [his] ability to work, the ALJ considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any medications taken for those symptoms." *Walker v. Comm'r*, 404 F. App'x 362, 366 (11th Cir. 2010). To discredit a claimant's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210.

An ALJ's review "must take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision. *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016). Instead,

the ALJ must consider the medical evidence as a whole and not broadly reject the evidence in the record. *Id.*

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom., Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). The Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. *See Ortega v. Chater*, 933 F. Supp. 1071, 1076 (S.D.F.L. 1996) (holding that the ALJ's failure to articulate adequate reasons for only partially crediting the plaintiff's complaints of pain resulted in reversal). "The question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

After explaining the pain standard, the ALJ considered Mr. Quinn's testimony about his symptoms to make his credibility determination. R. 20–24. With respect to his migraine headaches and medication side effects, the ALJ described Mr. Quinn's testimony as follows:

> He reported side effects of his medications that include drowsiness, and anxiety in crowds. The claimant testified . . . that he has migraine headaches that sometimes last all day.

R. 20–21. After "careful consideration" of the evidence, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." R. 21. The ALJ then found that Mr. Quinn's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 21. He stated that the claimant's statements "are inconsistent because they are not supported by the evidence of record." R. 21. The ALJ cited: objective findings made on examination, R. 22–23, and Mr. Quinn's reported activities, including camping trips and gym visits five to six times per week, R. 21–22. The ALJ also noted that the State agency physician opined "that the evidence of record does not support a finding of any severe physical limitations," but the ALJ found Mr. Quinn's seizure disorder to be severe and added related precautions to his residual functional capacity. R. 23.

Mr. Quinn argues that "the ALJ improperly applied the pain standard" and "failed to give proper credit to Quinn's testimony." Doc. 14 at 8. He also argues that the ALJ "totally failed to address the medical condition of migraine headaches in his decision." *Id.* at 8–9.

Substantial evidence supports the ALJ's finding under the pain standard. The ALJ was not "clearly wrong" to discredit Mr. Quinn's subjective complaints. *See Werner*, 421 F. App'x at 938–39. Contrary to Mr. Quinn's allegation that the ALJ "totally failed to address the medical condition of migraine headaches in his decision," Doc. 14 at 8–9, the ALJ specifically discussed Mr. Quinn's complaints of migraine headaches and medication side effects. R. 20–21. The ALJ also discussed the medical evidence in the record and cited such evidence when he articulated explicit reasons for discounting Mr. Quinn's testimony. *See Dyer*, 395 F.3d at 1212. And, the ALJ accounted for the medical evidence of record when he determined Mr. Quinn was limited by nonexertional limitations. R. 20, 23 ("The evidence does not support the claimant's allegations of disabling mental or physical impairments. The residual functional capacity assessment set forth above addresses any limitations resulting from a seizure disorder by limiting the claimant from unprotected heights, hazardous machines, commercial driving, open bodies of water, and open heat sources.").

The ALJ's decision and the medical records support the contention that Mr. Quinn's migraine headaches are related to, or the result of, his traumatic brain injury. In fact, the ALJ begins the paragraph in which he discusses Mr. Quinn's migraines with a reference to Mr. Quinn's traumatic brain injury. R. 20. The Veterans Administration disability determination explicitly ties Mr. Quinn's migraines to his

traumatic brain injury. R. 229 (assigned 30% rating for "migraine headaches, residual of traumatic brain injury"); R. 450 (stating migraines are service related). At the hearing, Mr. Quinn's attorney specifically asked him about his migraines as they related to his traumatic brain injury:

> Q: Okay. Now, as a result of your head trauma, you have headaches also, is that correct?
>
> A: Yeah, I --
>
> Q: Do you relate the headaches to the trauma?
>
> A: Yes, the migraines and the seizures and everything like that were attributed to the traumatic brain injury I received in the I[E]D attack.

R. 42.

Additionally, Mr. Quinn did not list migraine headaches on his applications to the SSA; instead, he listed post traumatic stress disorder, traumatic brain injury, and depression. R. 60. The ALJ thoroughly discussed the evidence related to each of these in his decision. R. 21–23. The ALJ also found that Mr. Quinn's "history of traumatic brain injury" was a severe impairment. R. 17.

As noted by the Commissioner, the record includes sparse evidence of migraines; in his brief Mr. Quinn cites fourteen medical records related to migraines. Doc. 14 at 4. However, all but one of those records either: are duplicates of the Veterans Administration disability determination attributing a 30% rating for migraines, R. 741, 743, 745, or are pharmacy records showing two prescriptions for

15

migraines, R. 687, 698–99, 703, 729, 751–52, 759, 766, 769. Mr. Quinn also points to his June 14, 2019 neurology visit in which he complained of migraine headaches. R. 637–39. The progress notes state that Mr. Quinn "started" having migraines for which he takes over the counter medications, and the neurologist indicated they may be tied to a sleep apnea. R. 638. The record indicates that Mr. Quinn was prescribed medication to treat migraines, R. 639, 698–99, and was advised to follow-up in six months. R. 639. During the neurology visit, Mr. Quinn's seizures were also discussed, a topic which was thoroughly addressed by the ALJ and further links Mr. Quinn's migraines to his traumatic brain injury. R. 637–39.

While the ALJ did mention Mr. Quinn's testimony regarding his migraines and the June 14, 2019 neurology visit, he did not specifically discuss that visit as it related to Mr. Quinn's migraines. *See* R. 21–23. However, the ALJ was not required to specifically refer to every piece of evidence in his decision. *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016). The ALJ's decision indicates that he considered the medical evidence as a whole and did not broadly reject the evidence in the record. Additionally, Mr. Quinn has pointed to no evidence that would compel a conclusion different from that found by the ALJ. Even the June 14, 2019 neurology visit, where migraines were discussed in detail, indicates they had just begun and were being treated conservatively. There is no evidence in the record to support Mr. Quinn's testimony that his migraines last all day, multiple times a

week, and persist despite medication. The same is true for Mr. Quinn's argument regarding medication side effects – he points to no medical evidence to support his allegations. Accordingly, there is no error in the ALJ's consideration of Mr. Quinn's subjective complaints.

## VI.  Conclusion

Upon review of the administrative record, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** this 22nd day of September, 2022.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE